UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

JASMIN BOWMAN,

                    Plaintiff,                    14-cv-3517 (PKC)

     -vs-                                              MEMORANDUM
                                                           AND
                                                           ORDER

CAROLYN COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

-----------------------------------------------------------x
CASTEL, U.S.D.J.

        Plaintiff Jasmin Bowman seeks judicial review of a final decision by the Commissioner of Social Security (the "Commissioner") denying her daughter's application for Child Supplemental Social Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. Plaintiff asserts that the decision of the Administrative Law Judge ("ALJ") was "erroneous, not supported by substantial evidence on the record, and/or contrary to the law." (Compl. ¶ 9.) Defendant has moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P. For reasons explained below, the motion is granted.

BACKGROUND

I. Procedural History

        On December 12, 2011, plaintiff applied to the Social Security Administration ("SSA") for SSI benefits on behalf of K.J.S., her infant daughter. (Administrative Record of Proceedings ("R.") 77-85.) Plaintiff alleged that K.J.S. suffered from asthma. (Compl. ¶ 4.) The alleged onset date of symptoms is January 10, 2011. (Compl. ¶ 5.) On February 1, 2012, the

Mailed to plaintiff, 7/21/2015.

SSA notified plaintiff that her claim was disapproved. (R. 42-46.)  The SSA further informed plaintiff of her right to request a hearing. (R. 42-44.)

Plaintiff then requested a de novo hearing before an Administrative Law Judge ("ALJ"). (R. 26-40.)  A letter confirming her request informed plaintiff that the Social Security office could provide her with assistance in securing representation, and she was provided a list of groups that could be of assistance. (R. 48-49, 51-55.)  On August 16, 2012, the date of the hearing, plaintiff appeared without counsel. (R. 26.)  ALJ Curtis Axelsen confirmed on the record that plaintiff understood her right to be represented, but that she wanted to proceed without representation. (R. 30.)

The hearing then proceeded with the plaintiff testifying and the ALJ eliciting facts from her regarding the claim. (R. 30-40.)  The ALJ issued a written decision on January 3, 2013, denying plaintiff's claim for benefits. (R. 22.)  In addition to testimony from the hearing, he reviewed all medical records related to K.J.S.'s asthma, including treating physicians' records and hospital intake forms. (R. 11-22.)  The ALJ concluded that K.J.S. was not disabled under Section 1614(a)(3)(C) of the Social Security Act at any time since the SSI application was filed. (R. 22.)

On February 19, 2013, plaintiff requested that the SSA Appeals Council review the ALJ's decision. (R. 6.)  In support of this request, plaintiff submitted additional medical records from Beth Israel Medical Center, dated February 22, 2011 to February 11, 2013. (R. 197-223.)  The Appeals Council denied plaintiff's request to review the ALJ's decision, rendering ALJ Axelsen's opinion the final decision of the Commissioner on March 11, 2014. (R. 1-3.)

On May 5, 2014, plaintiff, proceeding *pro se*, filed a timely action with this Court seeking review of the Commissioner's decision. (Compl. ¶ 1, 9.)  On June 6, 2014, this Court issued a scheduling order setting a date for each party to make submissions. (Docket No. 5.) Defendant filed a motion for judgment on the pleadings pursuant to Rule 12(e), Fed.R.Civ.P. (Docket No. 10, 11.)  On December 9, 2014, plaintiff requested additional time to file a cross-motion, as she was in the process of obtaining counsel. (Docket No. 12.)  The Court granted an extension to file a cross-motion, and subsequently ordered the plaintiff to file any final submissions by April 10, 2015. (Docket No.12, 13.)  The plaintiff has not submitted any papers in opposition; therefore, the defendant's motion is deemed fully submitted.

II. <u>Evidence Before the ALJ</u>

At the hearing before the ALJ, plaintiff testified about the asthmatic-related impairments K.J.S. was experiencing. (R. 26-40.)  The ALJ also received and reviewed the function reports and medical records of K.J.S. (R. 73-173.)

    A.   Non-Medical Evidence

K.J.S. was born on May 20, 2010, and was eighteen months old when her mother first sought SSI benefits. (R. 14.)  As of the date of the hearing, she was just over two years old. (R. 31.)  She lives with her mother in New York, New York. (R. 41.)

Plaintiff indicated on forms provided as part of the SSI application process that her daughter's asthma attacks occur four times a week, and that she treats her daughter with a nebulizer machine up to six times a day. (R. 117.)  She further testified at the hearing that each day, K.J.S. used an inhaler with a steroid medication in the morning, and a nebulizer in the evening. (R. 31-32.)  According to plaintiff, K.J.S. had upwards of six or seven asthma attacks during the first half of 2012, two of which were serious enough to warrant a visit to the doctor.

(R. 32-33.)  However, plaintiff did not visit the emergency room with her daughter during or immediately after any of these attacks. (R. 33.)  In response to the ALJ's questioning, plaintiff stated that beyond the asthma, K.J.S. did not have any other physical impairments. (R. 34-35.)

Plaintiff also completed a "Function Report" on December 12, 2011. (R. 96-103.) In this report, plaintiff denied that K.J.S. had any problems seeing, hearing, talking, understanding, or learning. (R. 97-99.)  Plaintiff also denied any limitation on her daughter's physical abilities. (R. 100.)  Plaintiff checked off "not sure" as a response to whether or not K.J.S. had an impairment that affected her behavior with others. (R. 101.)  When prompted to assess her daughter's ability to take care of her personal needs, plaintiff stated that K.J.S. was "developing normally . . . she has asthma issue only." (R. 101.)

On a form provided to the SSA, dated January 9, 2012, plaintiff listed K.J.S.'s medications as including Albuterol, Pulmicort, and an inhaler. (R. 117.)  In response to inquiries appearing on the form, plaintiff stated that although K.J.S. had been experiencing more frequent asthma attacks, she had not been hospitalized for her asthma in the last twelve months, and was treated almost exclusively by her primary care physician. (R. 117-119.)  Plaintiff also reported that her daughter was not administered any formal diagnostic tests for asthma, but her condition worsened when triggered by a change in the weather, or by excessive pollen outside. (R. 117.) Finally, Plaintiff reported on the form that her daughter did not have any limitations in moving, walking, speaking, interacting with others, or behaving appropriately relative to her age. (R. 118-119.)

    B.    Medical Evidence

In addition to testimony given at the hearing and SSA forms provided by plaintiff, the ALJ reviewed K.J.S.'s medical records from both Beth Israel Medical Center and Betances

Health Unit. (R. 148-154, 155-167.)  He reviewed numerous reports and evaluations from Dr. Maria R. Cellario, K.J.S.'s treating pediatrician, and Dr. J. Pauporte, a non-treating consultative pediatrician. (R. 149-173.)

        1. <u>Treating Physicians' Records</u>

On August 9, 2011, K.J.S. had her 15-month "well-baby exam" with her pediatrician, Dr. Maria R. Cellario, at Betances Health Center. (R. 149-150.)  The doctor noted at this appointment that K.J.S. was developing well, both cognitively and neurologically. (R. 149-150.)  She was speaking in short sentences, could name colors, was utilizing cups and spoons independently, and could walk backwards. (R. 149.)  Dr. Cellario further noted that K.J.S. was well-nourished, alert, and despite some history of asthma, had clear lungs. (R. 149-150.)  For the asthma, Dr. Cellario started K.J.S. on Pulmicort Suspension, an inhaler, once a day for thirty days, with five refills. (R. 150.)  The doctor also prescribed a refill of K.J.S.'s nebulizer medication, and instructed plaintiff to return with her daughter in two weeks for required vaccinations and a general follow-up. (R. 149-150.)

On October 20, 2011, K.J.S. saw Dr. Cellario again for complaints of congestion, and was subsequently prescribed Prelone syrup, a nebulizer, and an inhaled steroid. (R. 154.) The next day, plaintiff brought her daughter to Beth Israel Medical Center for complaints of exacerbation of K.J.S.'s asthma, characterized by acute congestion and wheezing. (R. 156-159.) Plaintiff claimed that the onset of the symptoms was gradual and had been occurring at a mild intensity for approximately one week. (R. 157.)  According to the plaintiff, K.J.S. was having trouble breathing at school, and was not moving air or retracting it. (R. 157.) The treating physician, Dr. Kumarie Etwaru, noted that K.J.S.'s wheezing was largely relieved by a nebulizer

and inhaled steroid, and placed no restrictions on her activity level. (R. 157-158.)  During the physical exam, Dr. Etwaru further noted that K.J.S. was playful and smiling. (R. 157-158.)

On January 20, 2012, K.J.S. returned to Dr. Cellario complaining of a cold and runny nose, combined with two days of wheezing prior to her appointment. (R. 177-178.) Examination of the lungs revealed bilateral wheezing and poor air exchange. (R. 177.)  Dr. Cellario ordered the administration of a nebulizer and a prescription for Prelone syrup, with instructions to return in two weeks for an asthma evaluation. (R. 177.)  Upon returning on February 9, 2012, plaintiff expressed concerns about her daughter's use of the nebulizer every night, but also reported no observation of sleeping or appetite problems. (R. 179.)  Dr. Cellario refilled the prescriptions, and scheduled a "well-baby visit" on the child's next birthday. (R. 180.)  At the February 9 appointment, the doctor also noted further K.J.S.'s apparent physical and cognitive wellness. (R. 180.)

On March 26, 2012, plaintiff returned with K.J.S. to Dr. Cellario because K.J.S. was wheezing and having trouble breathing over the prior weekend. (R. 181.)  Upon examination, Dr. Cellario observed that K.J.S. was not coughing in the office, and estimated that any recent coughing may have been due to dust and pollen from the park that she had visited over the weekend. (R. 182.)  Overall, the doctor observed that K.J.S. was "well now," and recommended that she continue with maintenance medication as prescribed. (R. 182.)

On July 3, 2012, approximately a month prior to plaintiff's hearing before the ALJ, K.J.S. returned to Dr. Cellario for her 2 year-old "well-child visit." (R. 183-184.)  The doctor noted that K.J.S. appeared to be well-nourished, alert, and active, despite having a demonstrated need for her asthma medication that day. (R.183-184.)  K.J.S. appeared to be functioning well both cognitively and physically for a child of her age; she was able to walk up

and down stairs, remove her shoes, and play peek-a-boo. (R. 184.)  Dr. Cellario refilled K.J.S.'s asthma medications, and ordered a follow-up appointment for flu shots in the fall. (R. 184.)

### 2. Consultative Physicians' Reports

On January 31, 2012, Dr. J. Pauporte, a non-treating, non-examining pediatrician, completed a Childhood Disability Evaluation Form based upon a review of K.J.S.'s medical records. (R. 168-173.)  Upon evaluation, Dr. Pauporte asserted that K.J.S.'s asthma was severe, but did not meet, medically equal or functionally equal the criteria of impairment for purposes of SSI, pursuant to Appendix 1 of 20 C.F.R. Part 404, Subpart P. (R. 186-169.)  Dr. Pauporte's conclusion was, in part, based upon an assessment of K.J.S.'s general functioning in six domains of activity; specifically, that she had no limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for herself. (R. 170-171.)  However, the doctor did assess K.J.S. as having a limitation in her health and physical well-being, evidenced by the hospital and doctor's visits brought on by her asthma. (R. 171.)  This limitation, Dr. Pauporte asserted, was "less than marked," and not sufficient enough to qualify as an impairment pursuant to the regulations. (R. 171.)

STANDARD OF REVIEW

A motion to dismiss under Rule 12(c), Fed.R.Civ.P., may be granted only if the movant establishes his entitlement to judgment on the pleadings as a matter of law. Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537, 47 F.3d 14, 16 (2d Cir. 1995).  "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

Under Rule 12(c), the movant bears the burden of establishing "that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, Vt., 901 F.2d 266, 269 (2d Cir. 1990) (citations omitted) (alteration in original).

In reviewing a denial of benefits, if the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied . . . the court shall review only the question of conformity with [the] regulations . . . "); see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).  A court may not review the Commissioner's decision de novo. See Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted).

A court's review thus involves two levels of inquiry. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999).  First, the court must review "whether the Commissioner applied the correct legal standard," id., including adherence to applicable regulations, see Kohler, 546 F.3d at 265. Second, the court must decide whether the Commissioner's decision is supported by substantial evidence. Tejada, 167 F.3d at 773.

An ALJ's "[f]ailure to apply the correct legal standards is grounds for reversal." Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004) (quoting Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).  An ALJ's factual findings supported by substantial evidence are "binding" on a district court, but "where an error of law has been made that might have affected the disposition of the case," the Court cannot simply defer to the ALJ's factual findings. Id.

Before deciding whether the Commissioner's determination is supported by substantial evidence, the reviewing court must first be satisfied that the claimant received "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the

8

Act." Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) (citation and quotation marks omitted). The ALJ has an affirmative duty to fully and fairly develop an administrative record. Echeverria, 685 F.2d at 755. This duty arises, regardless of whether the claimant is represented by counsel, from the fact that "a hearing on disability benefits is a non-adversarial proceeding." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel . . .' " Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (quoting Perez, 77 F.3d at 47). Accordingly, "the reviewing court must make a 'searching investigation' of the record to ensure that" the ALJ protected the claimant's rights. Robinson v. Sec'y of Health & Human Servs., 733 F.2d 255, 258 (2d Cir. 1984) (citation omitted). "A finding of gaps in the record or need for further development of the evidence is cause for remand." Batista v. Chater, 972 F.Supp. 211, 217 (S.D.N.Y. 1997) (Sotomayor, J.) (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).

SSI ELIGIBILITY FOR CHILD APPLICANTS

    The SSI program, 42 U.S.C. § 1381, et seq., provides "benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status." Bowen v. Galbraith, 485 U.S. 74, 75 (1988). A person under 18 is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). "[N]o individual under the age of 18 who engages in substantial gainful activity . . . may be considered to be disabled." Id. § 1382c(a)(3)(C)(ii).

9

Pursuant to regulation, to qualify as impaired, the child must have " 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a).  In evaluating whether a child is disabled for the purpose of SSI eligibility, the Commissioner considers whether the applicant is working or engaged in "substantial gainful activity." 20 C.F.R. § 416.924(a).  If not, the Commissioner evaluates whether the child has "severe" physical impairments that amount to a functional limitation. Id. The impairment must be medically determinable. Id. § 416.924(c).  If the impairment is not severe, the child will not be considered disabled. Id. § 416.924(a).

The child's functional limitations are evaluated in six different categories: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) self-care; and, (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).  The child is considered disabled if there are "marked" limitations in two of the six categories or "extreme" in one. 20 C.F.R. § 416.926a(a).

A "marked" impairment is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i).  An extreme limitation seriously interferes with a child's ability to initiate, sustain or complete activities, and is the worst limitation. 20 C.F.R. § 416.926a(e)(3)(i).

DISCUSSION

Based upon a review of the administrative record, including the ALJ's decision, this Court concludes that Bowman's claims on behalf of her daughter, K.J.S., received a full and fair hearing, and that the denial of SSA benefits was supported by substantial evidence. The Commissioner's denial of benefits is accordingly affirmed.

I. <u>Plaintiff Received a Full and Fair Hearing.</u>

The ALJ provided a full and fair hearing to plaintiff Bowman, who was not represented by counsel. <u>See</u> <u>generally</u> <u>Echevarria</u>, 685 F.2d at 755.  A notice sent to plaintiff prior to the hearing advised her of her right to be represented and gave her information on how to go about obtaining representation. (R. 42-46, 51-55.)  At the commencement of the hearing, the ALJ explained to plaintiff that she had a right to be represented, and that the hearing could be postponed to give her an opportunity to obtain representation. (R. 30.)  Plaintiff confirmed that she understood her rights, and wished to proceed without representation. <u>Id.</u>  The ALJ also explained to plaintiff that the purpose of the hearing was to present the ALJ with testimony that, combined with K.J.S.'s medical records, would help him render a decision separate from the SSA's decision. <u>Id.</u>

In addition to the live testimony of the plaintiff, the ALJ considered the extensive medical records concerning K.J.S.'s physical and cognitive growth and development. (R. 14.)  The administrative record appears to be extensive and thorough, consistent with the holding in <u>Rosa</u>, 168 F.3d at 79.

The record supports the conclusion that the plaintiff received a full and fair hearing.

II. <u>The ALJ's Findings are Supported by Substantial Legal Evidence</u>.

This Court also concludes that the ALJ's findings are supported by substantial evidence, and that he applied the correct legal standard in assessing Bowman's claims.

First, the ALJ found that K.J.S. was not engaged in substantial gainful activity since November 30, 2011, the date that the application for SSI was filed on her behalf. (R. 14.)

K.J.S. was two years old at the time of the ALJ hearing and had never worked; thus, this determination required by 20 C.F.R. § 416.924(b) was properly assessed.

Second, consistent with 20 C.F.R. § 416.924(c), the ALJ concluded that K.J.S. had the severe impairment of asthma. (R. 14.)  The ALJ evaluated K.J.S.'s asthma under the standard for a child, which is defined as more than a slight abnormality or a combination of slight abnormalities that causes more than minimal functional limitations. 20 C.F.R. § 416.924(c).

Third, despite the presence of asthma requiring medical attention and various prescriptions, the ALJ found that K.J.S. did not have an impairment or combination of impairments that met or equaled a listed impairment set forth in the regulations found in 20 C.F.R. Part 404, Subpart P, Appendix 1. The regulations prescribe a range of "Forced Expiratory Volume" ("FEV1") within which a person must fall to be considered an impairment for purposes of SSI eligibility. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The FEV1 ranges vary depending upon the age of the claimant. Id.  Alternatively, an individual may qualify as having an impairment under the regulations if he or she, despite continuing prescribed medical treatment and intervention, experiences asthma attacks occurring at least once every two months, or at least six times a year. Id.  The ALJ correctly stated that the evidence failed to establish the presence of either of these requirements, nor was there any evidence of extended periods of present symptoms or growth impairment. (R. 14.)

The ALJ also found that K.J.S. did not have an impairment, or combination of impairments under 20 C.F.R. § 416.926a(b)(1)(i)-(vi), that rose to the level of being functionally equal to the listings. (R. 15.)  The ALJ followed a two-step process in which he (1) determined if there was a medically determinable impairment that "could reasonably be expected to produce

the alleged symptoms," and (2) evaluated the intensity, persistence, and limiting effects of K.J.S.'s symptoms. (R. 15.)  The ALJ answered in the affirmative for question (1). (R. 15.)  On question (2), the ALJ correctly noted that in evaluating statements about the intensity, persistence, and limiting effects of symptoms that are not substantiated by objective medical evidence, he should consider the record as a whole in assessing credibility. (R. 15-16.)  The ALJ found that the plaintiff's statements about the limiting effects of her daughter's symptoms were not credible to the extent that they were inconsistent with the finding that K.J.S. did not have an impairment as defined by the regulations. (R. 15-17.)

The ALJ reviewed the six areas of functioning set forth at 20 C.F.R. § 416.926a(b)(1).  He found that K.J.S. had no limitations in (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; and (5) caring for one's personal needs. (R. 17-21.)  He found a "less than marked limitation" in K.J.S.'s health and physical well-being. (R. 22.)  For each area of functioning, ALJ Axelsen thoroughly evaluated the evidence and the respective regulatory standards prior to reaching his conclusions. (R. 17-21.)  His conclusions were consistent with the conclusions reached by both Dr. Cellario and Dr. Pauporte, the treating and non-treating physicians on the record, respectively. (R. 149-173.)

In regards to K.J.S.'s health and physical well-being, the ALJ found that K.J.S. experienced some limitations in functioning, and that her condition was "less than marked." (R. 21-22.)  In evaluating this factor, the ALJ considered the cumulative effects associated with impairments or treatments that limit physical functioning. (R. 21.)  The ALJ's conclusion was supported by the administrative record, which evidenced multiple visits to the emergency room for respiratory issues, continual refills of medications such as inhalers, nebulizers, and inhaled

steroids, and plaintiff's hearing testimony that described the at-home maintenance that K.J.S.'s asthma requires. (R. 21-22.)

The Court therefore concludes that Bowman received a full and fair hearing, and that the Commissioner's denial of SSI benefits was supported by substantial evidence, and was based upon the correct application of legal standards.

CONCLUSION

For the foregoing reasons, the defendant's motion for judgment on the pleadings (Docket No.10) is GRANTED. The Commissioner's decision is affirmed. The Clerk is directed to enter judgment for the defendant.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       July 21, 2015